Case 4:24-cv-02227   Document 36   Filed on 03/11/25 in TXSD   Page 1 of 20

United States District Court
Southern District of Texas
**ENTERED**
March 11, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| Fitz D. Jackson, § | |
| § | |
| *Plaintiff,* § | |
| § | Civil Action No. 4:24-cv-02227 |
| v. § | |
| § | |
| Yolanda Lopez, § | |
| § | |
| *Defendant.* § | |

## MEMORANDUM AND RECOMMENDATION

This is a civil rights suit under 42 U.S.C. § 1983 that also asserts related state-law claims. Plaintiff Fitz D. Jackson, acting *pro se*, alleges that Defendant Yolanda Lopez, the court coordinator for Harris County Probate Court No. 2 (the "Court Coordinator"), violated his due process rights by rescheduling a hearing in an underlying probate case. Dkt. 1 at 7-8. Subsequently, Jackson also amended his complaint in this Court to include a "Will-contest" and "Payment On Death" claim that were raised in the underlying probate case. *See* Dkt. 4 at 2.

The Court Coordinator has moved to dismiss all claims under Fed. R. Civ. P. 12(b)(1) and (b)(6), invoking the *Rooker-Feldman* doctrine and various immunity defenses. Dkt. 21. After carefully considering the motion, Jackson's response, Dkt. 35, the pleadings in this case, filings in related cases of which

this Court takes judicial notice, and the applicable law, it is recommended that the Court Coordinator's motion to dismiss be granted.

## Background

The following facts are drawn from the relevant filings in this Court and in the underlying probate court proceedings. The Court takes judicial notice of filings in the related proceedings, as matters of public record. *See Canada v. United States*, 950 F.3d 299, 313 n.16 (5th Cir. 2020) (taking judicial notice "of the record in prior related proceedings" and "draw[ing] reasonable inferences therefrom"); Fed. R. Evid. 201(b).

### A.  Jackson's first challenge in probate court and in this Court

In 2020, after Vera Mae James (the "Decedent") passed away, her daughter Courtney E. James ("James") filed an application to probate the Decedent's will.[1] *See* Application to Probate Will and For Issuance of Letters Testamentary [&] Application for Temporary Restraining Order & Emergency Request for Ex Parte Hearing at 1, *In the Estate of Vera Mae James*, No. 486625 (Probate Ct. No. 2, Harris Cnty., Tex. July 23, 2020) (hereinafter the "*Original Probate Suit*"). Jackson appeared in the case, asserting that he was an interested party and disputing the closeness of Ms. James's relationship with

---

[1] The docket sheets for the underlying probate cases can be viewed at https://www.cclerk.hctx.net/applications/websearch/CourtSearch_R.aspx?ID=5rboVf NJYS8mH7Mxhu4+EXD5m0zgd2OEcrAT/h+kaU2Rr6FYX5RcyWj7zgsWNcKJhQN HwK+/FEiykv/3b4CUw57Fq39RgXA2oDBSNvp8q5Q=#.

2

the Decedent. *See* Respondent's Counter Affidavit in Response to the First Amended Application for Temporary Restraining Order, *Original Probate Suit* (filed Sept. 14, 2020). Nevertheless, Ms. James was appointed as the Temporary Administratrix pending Jackson's will contest. *See* Order Granting Temporary Administration and Appointing Temporary Administrator Pending Will Contest, *Original Probate Suit* (signed Oct. 7, 2020).

A few years later, Jackson tried to back out of the parties' mediated settlement agreement, alleging that James had committed fraud. *See* Motion to Dismiss MSA Ruling, *Original Probate Suit* (filed July 7, 2022). The probate court rejected Jackson's contentions and granted judgment against him based on the settlement agreement. *See* Order Granting Judgment on the Mediated Settlement Agreement and Denying Respondent's Motion to Dismiss and Set Aside Mediation Agreement, *Original Probate Suit* (signed Aug. 12, 2022).

Jackson attempted to challenge the judgment in the *Original Probate Suit*. Most directly, Jackson filed a notice of restricted appeal after the 30-day deadline for direct appeal had expired. *See* Notice of [Restricted] Appeal, *Original Probate Suit* (filed Dec. 12, 2022); Tex. R. App. P. 26.1 (general 30-day deadline for direct appeal); Tex. R. App. P. 30 (restricted appeal). But because Jackson had timely filed a post-judgment motion and not withdrawn it, the court of appeals dismissed his restricted appeal for lack of jurisdiction. *See Jackson v. James*, No. 01-22-00922-CV, 2023 WL 2977748, at *1-2 (Tex.

3

App.—Houston [1st Dist.] Apr. 18, 2023, pet. denied) (per curiam). The Texas Supreme Court denied Jackson's request for review and his motion for rehearing. *See* Notice, *Jackson v. James*, No. 23-0360 (Tex. Sept. 1, 2023); Notice, *Jackson v. James*, No. 23-0360 (Tex. Nov. 3, 2023) (denying rehearing).

Even before filing his notice of appeal, however, Jackson attempted to seek relief in this Court by filing a federal suit against James, claiming that the probate court had violated his right to jury trial. *See* Complaint and Request for Injunction at 5, *Jackson v. James*, No. 4:22-cv-2886 (S.D. Tex. Aug. 25, 2022). Citing the *Rooker-Feldman* doctrine, this Court dismissed the suit for lack of jurisdiction. *See Jackson v. James*, No. 4:22-cv-2886, 2023 WL 1456787, at *2 (S.D. Tex. Feb. 1, 2023) (Hanks, J.).

### B. Jackson's second challenge in probate court, which precipitated this suit

After his appeal was dismissed, Jackson filed a new ancillary suit against James in the probate court. *See* Plaintiff's Original Petition, *Jackson v. James*, No. 486625-401 (Probate Ct. No. 2, Harris Cnty., Tex. Jan. 12, 2024) (hereinafter, the "*Second Probate Suit*"). Much like his prior state court filings, the petition accused James of fraudulently submitting a revoked will for probate. *See id.* at 2.

In April 2024, Jackson filed a motion for declaratory judgment in the probate court, claiming that James had exceeded her authority as the

4

temporary administrator, and requesting that the court nullify the mediated settlement agreement that it had already held was enforceable. *See* Plaintiff's Motion for Declaratory Judgment at 2, *Second Probate Suit* (docketed Apr. 5, 2024). James then sought security for the costs of litigating the *Second Probate Suit*. Motion for Security for Costs, *Second Probate Suit* (filed May 10, 2024).

On May 29, 2024, the probate court signed an order granting James's request for $50,000.00 in security and providing Jackson twenty days to comply. Order for Security for Costs, *Second Probate Suit* (signed May 29, 2024). After the 20-day deadline expired, James filed a motion to dismiss, arguing that Jackson had attempted to fraudulently procure a bond by misrepresenting to Travelers Casualty and Surety Company of America that he was the administrator of the Decedent's estate. *See* Defendant's Motion to Dismiss for Failure to Give Security for Costs and for Lack of Jurisdiction, at 2, *Second Probate Suit* (filed July 24, 2024); *see also* Bond, *Second Probate Suit* (filed June 3, 2024) (stating that Fitz Jackson was "appointed as Administrator of Vera Mae James, deceased"). As a further contention, James argued that dismissal was warranted because Jackson's allegations had already been litigated and resolved in the *Original Probate Suit*. *See* Defendant's Motion to Dismiss for Failure to Give Security for Costs and for Lack of Jurisdiction at 3-5, *Second Probate Suit* (filed July 24, 2024).

5

On June 12, 2024, while the *Second Probate Suit* was still ongoing, Jackson filed a new suit in this Court, this time against the Court Coordinator. Dkt. 1. Asserting a claim under 42 U.S.C. § 1983, the complaint alleges that the Court Coordinator violated Jackson's due process rights by changing the May 23, 2024 hearing on his motion for declaratory judgment to a hearing on James's motion for security. *See id.* at 8-9. According to Jackson, this schedule change "caused a $50,000 bill to be owed to the court …." *See id.* at 9. Jackson further alleges that the probate court refused to "furnish the form" that must be submitted with the bond. *See id.* On June 25, 2024, Jackson filed "Amendments to Petition" that purport to raise, under state law, a "Will-contest claim" and a "Payment on Death (POD) claim" that were filed in the probate court. *See* Dkt. 4.

With the Court's permission, *see* Dkt. 20, the Court Coordinator filed a motion to dismiss all claims. *See* Dkt. 21. Jackson sought a stay of the case due to health problems, which the Court addressed by giving him an extended period—until October 28, 2024, to respond to the motion to dismiss. *See* Dkt. 20 at 2-3. As the case went on, Jackson filed a "Letter Regarding Jurisdiction In 28 USC § 1367(a) Suits" asserting that the probate court had improperly dismissed his declaratory judgment claim on September 27, 2024.[2] Dkt. 26.

---

[2] The probate court's docket sheet reflects a 10:30am hearing on that date, which notes "Motion to Dismiss Granted – Order signed."

6

Jackson then filed another request for continuance that sought a suspension of all case deadlines. Dkt. 28. The Court denied Jackson's blanket, open-ended request. Dkt. 29.

In the meantime, the probate court granted James's motion for relief against Jackson, dismissed the *Second Probate Suit* with prejudice, and awarded James $10,625.23 in attorneys' fees. *See* First Amended Order Granting Defendant's Motion to Dismiss for Failure to Give Security for Costs and for Lack of Jurisdiction, *Second Probate Suit* (signed Oct. 10, 2024). Jackson filed an appeal, which remains pending.[3] *See* Notice, *Jackson v. James*, No. 01-24-00806-CV (Tex. App.—Houston [1st Dist.] Oct. 22, 2024).

Pivoting back to this Court, Jackson sought another continuance of the deadline for responding to the Court Coordinator's motion to dismiss. Dkt. 31 (filed October 25, 2024). The Court granted the extension in part, giving Jackson another 30 days to respond, *i.e.*, until December 6, 2024. Dkt. 32.

The day before the deadline expired, Jackson filed yet another motion requesting an indefinite continuance of his deadline to respond to the Court Coordinator's motion to dismiss this suit. *See* Dkt. 33. According to his motion, Jackson's briefing deadline in his appeal in Case No. 01-24-00806-CV makes his deadline "unachievable," although he further asserts that he will not be

---

[3] The docket sheet can be viewed at https://search.txcourts.gov/Case.aspx?cn=01-24-00806-CV&coa=coa01.

submitting his appellate brief timely either.[4] *See id.* at 4. But in the same filing, Jackson sought affirmative relief from this Court, namely to enjoin the probate court's "ruling of September 27, 2024" because it "interfere[d] with this Federal Court's prerogative by asserting jurisdiction." *See id.* at 1-2. The request cites the "Anti-Injunctions Act," attaches multiple filings in the probate court, and embeds further allegations that his Section 1983 claim—the sole basis for jurisdiction in this case—challenges the Court Coordinator's acts or omissions that allegedly led to the final order dismissing his underlying state claims. *See* Dkt. 33 at 3-4.

The Court denied Jackson's further request for an indefinite extension to respond to the Court Coordinator's long-pending motion to dismiss but granted him until January 10, 2025 to file his response. Dkt. 34. Jackson submitted his response. Dkt. 35. The motion to dismiss is ripe for resolution.

## **Legal standard**

"Under Rule 12(b)(1), a claim is 'properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate' the claim." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012) (quoting *Home Builders Ass'n, Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)). "Lack of subject-matter

---

[4] The docket sheet in Case No. 01-24-00806-CV indicates that Jackson sought multiple continuances of his deadline for submitting his appellate brief.

jurisdiction may be found in the complaint alone, the complaint supplemented by the undisputed facts as evidenced in the record, or the complaint supplemented by the undisputed facts plus the court's resolution of the disputed facts." *Id.* at 287. The plaintiff bears the burden to establish that subject-matter jurisdiction exists. *Id.* at 286.

Dismissal under Rule 12(b)(6) is warranted if a party fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Rather, "[t]he complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim." *See Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (analyzing *Twombly*, 550 U.S. at 555-56). When resolving a Rule 12(b)(6) motion, the court "accept[s] all well-pleaded facts as true and view[s] those facts in the light most favorable to the

9

plaintiffs." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quotation omitted).

When reviewing a Rule 12(b)(6) motion, pro se pleadings are liberally construed. *Butler v. S. Porter*, 999 F.3d 287, 292 (5th Cir. 2021) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). But "regardless of whether the plaintiff is proceeding pro se or is represented by counsel, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Prescott v. UTMB Galveston Tex.*, 73 F.4th 315, 318 (5th Cir. 2023) (quoting *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)); *see also Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) ("[P]ro se plaintiffs must still plead factual allegations that raise the right to relief above the speculative level.").

## Analysis

The Court Coordinator has raised multiple grounds for dismissing Jackson's Section 1983 and state-law claims: (1) the *Rooker-Feldman* doctrine; (2) absolute immunity; (3) qualified immunity; and (4) official immunity (with respect to state law claims). Dkt. 21 at 2-6. In addition, the Court Coordinator argues that Jackson's failure to state a cognizable claim leaves no basis for obtaining declaratory or injunctive relief. *See id.* at 6-8. As indicated below, the Court Coordinator is not entitled to dismissal for lack of jurisdiction. But

the Court Coordinator is correct that Jackson's claims should be dismissed on the merits.

## I. The *Rooker-Feldman* doctrine does not apply.

Because of its jurisdictional nature, the Court addresses the *Rooker-Feldman* doctrine first. The procedural posture of the *Second Probate Suit* negates the Court Coordinator's reliance on that doctrine here.

Under the *Rooker-Feldman* doctrine, "federal district courts, as courts of original jurisdiction, lack appellate jurisdiction to review, modify, or nullify final orders of state courts."[5] *Weekly v. Morrow*, 204 F.3d 613, 615 (5th Cir. 2000) (quoting *Liedtke v. State Bar of Tex.*, 18 F.3d 315, 317 (5th Cir. 1994)); *see also Truong v. Bank of Am., N.A.*, 717 F.3d 377, 382 (5th Cir. 2013). Instead, errors in state court proceedings should be "corrected by ... state appellate court[s]. Thereafter, recourse at the federal level is limited solely to an application for a writ of certiorari" to the U.S. Supreme Court. *Liedtke*, 18 F.3d at 317; *see also* 28 U.S.C. § 1257 ("Final judgments or decrees rendered by the highest court of a State ... may be reviewed by the Supreme Court by writ of certiorari ....").

The *Rooker-Feldman* doctrine, however, has strict limitations. Pertinent here, it does not apply unless the federal suit challenges a *prior* state-court

---

[5] *See generally Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *Dist. of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983).

11

judgment. As the Supreme Court has held, "*Rooker-Feldman* is not triggered simply by the entry of judgment in state court" after the federal suit was filed. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005). Nor does it apply if the state-court judgment was pending on appeal when the federal suit was filed. *See Miller v. Dunn*, 35 F.4th 1007, 1012 (5th Cir. 2022).

The foregoing limitations render the *Rooker-Feldman* doctrine inapplicable to this case. Jackson's claims challenge the Court Coordinator's actions in the *Second Probate Suit*—not the *First Probate Suit*. When Jackson filed this federal suit on June 12, 2024, Dkt. 1, no final judgment had been entered in the *Second Probate Suit*. Rather, the *Second Probate Suit* was dismissed later, on October 10, 2024. *See* First Amended Order Granting Defendant's Motion to Dismiss for Failure to Give Security for Costs and for Lack of Jurisdiction, *Second Probate Suit* (signed Oct. 10, 2024). And the dismissal is non-final because Jackson's appeal of the decision remains pending. *See Jackson v. James*, No. 01-24-00806-CV (Tex. App.—Houston [1st Dist.] Oct. 21, 2024) (initiating appeal). Because Jackson's federal suit does not challenge a pre-existing state court final judgment, the *Rooker-Feldman* doctrine does not preclude his claims.[6]

---

[6] The relative posture of the state and federal proceedings implicates a different doctrine that the Court Coordinator has not raised, namely abstention under *Younger v. Harris*, 401 U.S. 37 (1971). The *Younger* doctrine instructs that federal courts should abstain from interfering with ongoing state proceedings that implicate

## II.  Jackson has not pleaded sufficient facts to overcome the Court Coordinator's qualified immunity.

In the alternative, the Court Coordinator asserts that Jackson's claims are barred by absolute or qualified immunity. Both forms of immunity are affirmative defenses from liability and suit that do not implicate the Court's subject-matter jurisdiction. *See Cozzo v. Tangipahoa Par. Council*, 279 F.3d 273, 283 (5th Cir. 2002) (classifying absolute immunity as an "affirmative defense"); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982) (characterizing qualified immunity as an affirmative defense); *Espinoza v. Garza*, 2020 WL 2310022, at *6 (S.D. Tex. Apr. 6, 2020) (collecting authorities for the principle that qualified immunity "is not jurisdictional"), *adopted by* 2020 WL 2309686 (S.D. Tex. May 8, 2020). The legal standards for these defenses differ in their particulars.

Court personnel enjoy "absolute immunity from actions for damages arising from acts they are specifically required to do under court order or at a judge's discretion." *Clay v. Allen*, 242 F.3d 679, 682 (5th Cir. 2001) (quoting *Tarter v. Hury*, 646 F.2d 1010, 1013 (5th Cir. 1981)). In *Clay*, for instance, the court held that a court clerk was absolutely immune from liability for following

---

important state interests. *See Moore v. Sims*, 442 U.S. 415, 425 (1979) (extending *Younger* to civil proceedings). Nevertheless, because the Court Coordinator has asserted other meritorious grounds for dismissal, *see infra* Parts II & III, the undersigned declines to apply *Younger* abstention *sua sponte*.

13

the judge's instructions when setting a bail amount that a plaintiff claimed was excessive. *See id.* This is because "court personnel should not serve as a [lightning] rod for harassing litigation …." *In re Foust*, 310 F.3d 849, 855 (5th Cir. 2002). But as noted further in *Clay*, the clerk "enjoys only qualified immunity for those routine duties not explicitly commanded by a court decree or by the judge's instructions." 242 F.3d at 682.

Here, Jackson alleges that the Court Coordinator changed a court setting in the *Second Probate Suit* so that a May 23, 2024 hearing addressed James's motion for security instead of Jackson's request for declaratory relief. Dkt. 1 at 8. Nothing in the complaint indicates that the probate court ordered or otherwise directed the Court Coordinator to change the hearing. Instead, Jackson's description of events, which must be taken as true at this stage, suggest that the Court Coordinator was performing "routine duties" not commanded by the probate court itself. As a result, the allegations on their face do not establish that the Court Coordinator is absolutely immune.

The Court Coordinator is, however, correct that Jackson's allegations fail to overcome her qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quotation omitted). The analysis has two steps.

14

First, a court determines "whether the facts that a plaintiff has alleged ... make out a violation of a constitutional right." *Id.* at 232. Second, "the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* The court has discretion to determine which of these prongs "should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236. The plaintiff bears the burden to negate a defendant's invocation of qualified immunity. *See McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam).

Jackson's claims fail to meet either prong of the qualified immunity test. His claims accuse the Court Coordinator of violating his right to procedural due process, *i.e.*, "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (citing *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). Nevertheless, the Supreme Court has cautioned that "[d]ue process does not, of course, require that the defendant [or plaintiff] in every civil case actually have a hearing on the merits." *Boddie v. Connecticut*, 401 U.S. 371, 378 (1971). Rather, the required procedures vary depending on the type and circumstances of the case. *See id.*

In this case, Jackson complains that he arrived at the probate court on May 23, 2024, believing that the hearing would address his own affirmative claims for relief, but discovering that the hearing instead would address James's motion requesting that Jackson be required to post security as a

15

condition for continuing his suit. *See* Dkt. 1 at 8; Dkt. 35 at 2. The relevant procedures not only authorized James's request to demand security but explicitly contemplate that her request be sought and resolved *before* Jackson's claims could proceed to trial. *See* Tex. Est. Code § 53.052(b) (authorizing an interested party or an officer of the court to file a motion seeking security for probable costs of the proceeding "[a]t any time before the trial of an application, complaint, or opposition" filed by another person against the estate).

Moreover, Jackson had sufficient notice and opportunity to be heard on James's request for security. Even before the hearing, Jackson was aware of and presented his position on James's motion because he previously filed a response to the motion for security. *See* Response to Motion for Security for Costs*, Second Probate Suit* (filed May 7, 2024); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985) (due process requires an "opportunity to present reasons, *either* in person *or* in writing") (emphasis added). Jackson also attended the hearing that addressed James's motion for security, which gave him yet another opportunity to be heard on the issue. *See* Dkt. 1 at 8. Thus, Jackson knew of and exercised his opportunity to be heard, both in writing and at an oral hearing, on James's motion for security. Those uncontroverted facts negate his due process claim.

As a further flaw, Jackson cannot show that the Court Coordinator's conduct, under the specific circumstances of this case, violated any clearly

16

established right. This step of the qualified immunity analysis asks whether "pre-existing law" made the unlawfulness of the conduct in question apparent, such that "a reasonable official would understand that what [she] is doing violates that right." *See Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (emphasizing that whether a right was clearly established requires a "particularized" inquiry). To meet the threshold, there must be "controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Turner v. Lieutenant Driver*, 848 F.3d 678, 686 (5th Cir. 2017) (quotation omitted).

Jackson does not cite, nor has this Court found, any binding authority or at least a robust consensus of persuasive authority indicating that the Court Coordinator's scheduling change violated Jackson's due process rights. To the contrary, Jackson knew about James's pending motion for security, submitted a written response, and attended the hearing on James's motion. And as addressed above, state procedural rules contemplate that the motion for security would be addressed before reaching the merits of Jackson's claims. Jackson therefore cannot overcome the Court Coordinator's qualified immunity against his Section 1983 claim. This claim should be dismissed.

## III. The Court Coordinator is also entitled to official immunity against Jackson's state law claims.

Jackson's amended complaint injected a state-law "[w]ill contest claim" and "Payment on Death (POD) claim" that he bases on the same allegations as his Section 1983 claim. *See* Dkt. 4 at 2. The Court Coordinator asserts that these claims are foreclosed by official immunity. *See* Dkt. 21 at 5-6 (Court Coordinator's motion invoking official immunity). The Court agrees.

Official immunity "protects government employees from personal liability for certain actions taken in the course of their employment." *Ramirez v. Martinez*, 716 F.3d 369, 379 (5th Cir. 2013) (citing *Telthorster v. Tennell*, 92 S.W.3d 457, 460-61 (Tex. 2002)). Official immunity applies to a government employee's (1) "performance of discretionary duties (2) that are within the scope of the employee's authority, (3) provided that the employee acts in good faith." *Id.* (quoting *Telthorster*, 92 S.W.3d at 461). "The good faith element is 'substantially' the same as the federal inquiry of qualified immunity; to determine 'good faith' we ask whether a reasonably prudent official could have believed his or her conduct was consistent with the plaintiff['s] rights." *Hernandez v. Tex. Dep't of Protective & Regul. Servs.*, 380 F.3d 872, 885 (5th Cir. 2004) (quoting *Cantu v. Rocha*, 77 F.3d 795, 809 (5th Cir. 1996)).

Here, Jackson's allegations plainly implicate the Court Coordinator's performance of discretionary duties within the scope of her authority, namely

18

the scheduling of hearings in the probate court. In addition, and as reflected above, it was reasonable for the Court Coordinator to believe that the change of hearing schedule did not offend due process because Jackson had already responded to the motion for security—a motion whose resolution needed to precede any hearing or trial on the merits of Jackson's claims. *See supra* Part II; Tex. Est. Code § 53.052(b). Jackson's conclusory attempts to impugn the Court Coordinator's motives, characterizing them as "fraudulent[]," or part of a series of violations, *see, e.g.*, Dkt. 35 at 4,[7] are inadequate to show bad faith. Official immunity thus precludes Jackson's state law claims, which should be dismissed with prejudice.

### IV. Jackson lacks a cognizable basis for obtaining declaratory or injunctive relief.

The dismissal of Jackson's Section 1983 and state-law claims leaves no basis for his requests for declaratory and injunctive relief. These requests depend on another underlying cause of action. *See Reyes v. N. Tex. Tollway Auth.*, 861 F.3d 558, 565 n.9 (5th Cir. 2017) (request for declaratory relief "must be supported by some underlying cause of action"); *O'Neal v. Select*

---

[7] Jackson's response to the motion to dismiss asserts there were scheduling issues during the *Original Probate Suit*. *See* Dkt. 35 at 7. But because a final judgment adverse to Jackson was entered in that case, the *Rooker-Feldman* doctrine bars his attempt to relitigate those proceedings. *See Jackson*, 2023 WL 1456787, at *2 (applying *Rooker-Feldman* and dismissing Jackson's prior suit that challenged the probate court's final judgment).

19

*Portfolio Servicing, LLC*, 2015 WL 12778696, at *2 (S.D. Tex. May 29, 2015) (same principle for injunctive relief, citing *Cook v. Wells Fargo Bank, N.A.*, 2010 WL 2772445, at *4 (N.D. Tex. July 12, 2010)); Dkt. 21 at 6-8.  Because Jackson's state-law and 1983 claims should be dismissed, his claims for declaratory and injunctive relief are likewise barred.

## Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Defendant Yolanda Lopez's motion to dismiss (Dkt. 21) be **GRANTED**, and that Plaintiff Fitz D. Jackson's claims be **DISMISSED WITH PREJUDICE.**

**The parties have fourteen days from service of this Report and Recommendation to file written objections.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.  *Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).**

The Clerk of Court is directed to send a copy of this document by email and regular mail to Plaintiff's record addresses.

Signed on March 11, 2025, at Houston, Texas.

_____
Yvonne Y. Ho
United States Magistrate Judge